IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ENGURASOFF and JOSHUA OGDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY and COCA-COLA REFRESHMENTS USA, INC.,<br><br>Defendants. | No. C 13-03990 JSW<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |

Now before the Court is the motion to dismiss filed by Defendants the Coca-Cola Company and Coca-Cola Refreshments USA, Inc. ("Defendants"). Upon consideration of the parties' papers and the relevant legal authority, the Court denies in part and grants in part the motion to dismiss. The motion for consolidation is also before the Court. However, in light of the recent transfer of two other related cases, the Court DENIES the motion to consolidate as premature without prejudice to refiling once the parties from all of the cases have had an opportunity to meet and confer regarding consolidation.[1]

---

[1] The Court GRANTS Defendants' and Plaintiffs' requests for judicial notice. Fed. R. Evid. 201. The Court DENIES Plaintiffs' supplemental request for judicial notice and DENIES Defendants' request to file a reply to Plaintiffs' supplemental brief. The Court has only considered the supplemental briefing to the extent it complies with the Court's Order allowing supplemental briefing on the Supreme Court ruling in *POM Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228 (2014) and its impact on the motion to dismiss.

## BACKGROUND

In this purported class action, Plaintiffs challenge the ingredients label on Defendants' carbonated cola beverage, known as Coca-Cola or Coke. Defendants include the ingredient phosphoric acid on the Coke label. Plaintiffs allege that phosphoric acid is actually an artificial flavor and/or chemical preservative and should be labeled as such in accordance with the applicable regulations. Defendants argue that phosphoric acid does not constitute an artificial flavor and/or chemical preservative under the applicable regulations and, thus, Plaintiffs claims are preempted and should be dismissed.

The putative class action alleges causes of action for violations of the following state consumer protection laws: (1) California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; (2) Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*; (3) False Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq.*, and (4) breach of the implied warranty of merchanability. The Court shall address additional facts as necessary in the remainder of this Order.

## LEGAL STANDARD

Defendants move to dismiss each of the claims pursuant to Rule 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted where the pleadings fail to state a claim upon which relief can be granted. The court construes the complaint in the light most favorable to the non-moving party and considers all material allegations in the complaint as true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conceivable conduct but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). However, Rule 9(b)'s particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement of the claim. Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

"If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**ANALYSIS**

**A. Motion to Dismiss.**

    **1. Preemption.**

3

The Food Drug and Cosmetics Act ("FDCA") empowers the Federal Drug Administration ("FDA") (a) to protect the public health by ensuring the safety, wholesomeness, sanitariness, and proper labeling of foods; (b) to promulgate regulations to implement this statute; and (c) to enforce its regulations through administrative proceedings. *See* 21 U.S.C. § 393(b)(2)(A). The FDCA established a comprehensive federal scheme of food regulation to ensure food safety and proper labeling in an effort to avoid misleading consumers. *See* 21 U.S.C. § 341, *et seq*. Among other labeling requirements, the FDCA mandates the identification of artificial flavors and chemical preservatives. *See* 21 U.S.C. § 393(k).

In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA") to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods and to establish the circumstances under which consumers may bring claims over such nutrition labels. *See* H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337. Pursuant to the NLEA, the FDA promulgated regulations relating to food labeling. *See*, *e.g.*, 21 C.F.R. § 101.1, *et seq*.

Generally, the FDA considers a food misbranded if "its labeling is false or misleading in any particular." *See* 21 U.S.C. § 343(a)(1). However, the NLEA amendments included a broad express preemption provision that governs the labeling of products. *See* 21 U.S.C. § 343-1(a)(3). Congress declared that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)]." Pub. L. No. 101-535, 104 Stat. 2353, 2364 (Nov. 8, 1990). In particular, the NLEA provides, in pertinent part, that no state may directly or indirectly establish "any requirement for the labeling of food that is not identical to the requirement of [21 U.S.C. § 343(q)]." *See* 21 U.S.C. § 343-1(a)(4). The NLEA, however, does not purport to preclude all state regulation of nutritional labeling, but rather seems to "prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) (quoting H. Rep. No 101-538, at 10 (1990)).

California's Sherman Laws adopt the federal labeling requirements as the food labeling requirements of the state. *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). In addition to this blanket provision, the Sherman Laws specifically adopted certain provisions that mirror or incorporate by reference the FDCA and NLEA food labeling and packing requirements, including the following provisions that, inter alia, form the basis for the "unlawful" prong of plaintiff's UCL claim: "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact. Exemptions may be established by the department." *See* Cal. Health & Safety Code § 110740.

The issue presented by Defendants' motion to dismiss is whether phosphoric acid is considered an artificial flavor or chemical preservative under the FDCA and the applicable regulations. If it is not, Plaintiffs' claims would be preempted.

### a. Artificial Flavor.

The FDA regulations define "artificial flavor" as

> any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof. Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter except where these are derived from natural sources.

*See* 21 C.F.R. § 101.22(a)(1). Plaintiffs allege that Defendants use phosphoric acid to add a tartness to Coke. On the face of the above regulation, Plaintiffs allegations appear sufficient to show, at this procedural stage, that phosphoric acid was used to impart flavor, but was not labeled in accordance with the applicable regulations. Defendants make several arguments in an attempt to show that, as a matter of law, the Court may determine that phosphoric acid is not an artificial flavor. The Court does not find any of their arguments persuasive.

First, Defendants argue that because phosphoric acid is not listed as one of the substances in 21 C.F.R. §§ 172.515(b) and 182.60, the Court should find that the FDA has made

5

a determination that phosphoric acid is not an artificial flavor. However, as the regulation states, theses lists are not exhaustive. Therefore, the absence of phosphoric acid on these lists does not mean that the FDA has made a finding that phosphoric acid is *not* an artificial flavor.

Second, Defendants argue that an artificial flavor has to impart a "characteristic flavor." In support of this argument, Defendants cite to 21 C.F.R. §§ 170.3(o)(11), (12). This regulation provides:

> The following terms describe the physical or technical functional effects for which direct human food ingredients may be added to foods. . . .
> . . .
> (11) Flavor enhancers: Substances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own.
> (12) Flavoring agents and adjuvants: Substances added to impart or help impart a taste or aroma in food.

*See* 21 C.F.R. §§ 170.3(o)(11), (12). These regulations, standing alone, are insufficient to insert a requirement that all artificial flavors, by definition, must impart a characteristic taste and/or aroma. The cases on which Defendants rely do not assist either. *See Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 888-89 (C.D. Cal. 2013); *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2012). In each of those cases, the courts were addressing the claim that an ingredient in the product made the natural characteristic flavor label misleading pursuant to 21 C.F.R. § 101.22(i)(2), a regulation that is not at issue in the above captioned matter. This regulation provides, in pertinent part, that

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
> . . .
> (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in

> the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored".

*See* 21 CFR § 101.22(i). Neither Plaintiffs nor Defendants contend that the Coke label makes any direct or indirect representation with respect to the primary recognizable flavor. Accordingly, this regulation, and the authority construing it, is inapplicable. Significantly, the *Ivie* court, when addressing a claim that more closely relates to the claims asserted by Plaintiffs here – that certain ingredients constituted artificial flavors or sweeteners and should have been labeled as such – the court held that the factual determination of whether such ingredients did, in fact, qualify as artificial flavors or sweeteners could not be made upon a motion to dismiss. *See Ivie v. Craft Foods Global, Inc.*, 2013 WL 685372, *10 (N.D. Cal. Feb. 25, 2013). The court did not consider whether or not the ingredients imparted a characteristic flavor.

The Court concurs with the finding of the court in *Ivie* and finds that it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor. Accordingly, the Court cannot find, as a matter of law, that Plaintiffs' claims with respect to artificial flavoring are expressly preempted.

### b. Chemical Preservative.

The FDA regulations define "chemical preservative" as

> any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

*See* 21 C.F.R. § 101.22(a)(5). Defendants argue that chemical preservatives only include ingredients that are specifically added to food for their preservative function, and that, phosphoric acid does not meet this definition for Coke. However, even if Defendants' interpretation of the FDA regulations was accurate, it would require a factual determination that is not appropriate at this procedural stage. Accordingly, the Court cannot find, as a matter of law upon a motion to dismiss, that Plaintiffs' claims with respect to chemical preservatives are expressly preempted.

Nor does the Court find that Plaintiffs' claims are impliedly preempted or that the Court should abstain from deciding their claims pursuant to the primary jurisdiction doctrine.

7

### 2. Failure to State a Claim.

Defendants also move to dismiss Plaintiffs' claims on the grounds that they fail to state a claim. Specifically, Defendants argue that Plaintiffs fail to allege sufficient facts to show reliance as required under their UCL, FAL, and CLRA claims, that Plaintiffs' "Original Formula" claims fail, and that Plaintiffs fail to allege an implied warranty claim.

#### a. Reliance.

Plaintiffs need to allege reliance for their claims under the UCL, FAL, and CLRA. *Kwikset Corp. V. Superior Ct.*, 51 Cal. 4th 310, 326 (2011); *see also Wilson v. Frito-Lay North America, Inc.*, 961 F. Supp. 2d 1134, 1143-44 (N.D. Cal. 2013). Plaintiffs argue that they do not need to allege reliance for their unlawful claim under the UCL. However, because this claim is grounded in fraud, their unlawful claim is subject to the same requirements regarding reliance. Nevertheless, Plaintiffs sufficiently plead that they did not know that phosphoric acid was an artificial flavor or a chemical preservative, that they would not purchased Coke if they had known it contained artificial flavoring and/or a chemical preservative, and that they relied on Coke's labels. (Amended Class Action Compl., ¶¶ 107-109, 117.) Accordingly, the Court denies the motion to dismiss on this ground.

#### b. Original Formula.

Plaintiffs' Amended Class Action Complaint includes several allegations regarding Coke's "original formula." Defendants argue that Plaintiffs' allegations regarding the "original formula" fail to state a claim. Plaintiffs do not oppose Defendants' motion on this ground. Accordingly, the Court dismisses Plaintiffs' claims to the extent they are premised on contentions regarding Coke's "original formula."

#### c. Plaintiffs' Implied Warranty Claim.

"Unless excluded or modified [ ], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1). "[L]iability for an implied warranty does not depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon whether the[ ] product is merchantable under the code." *Hauter v. Zogarts,* 14 Cal. 3d 104, 117 (1975). The

Commercial Code does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Id.* A plaintiff who claims a breach of the implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.,* 114 Cal. App. 4th 402, 406 (2003).

Where the plaintiffs did not allege that the products lacked the most basic degree of fitness, courts have rejected claims that products violate the implied warranty of merchantability based on the alleged label violations under the FDCA. *See*, *e.g.*, *Viggiano v. Hansen Natural Corp.,* 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (dismissing implied warranty of merchantability claim where plaintiff did not allege that Hansen's diet soda was not suitable for use as a diet soda); *Swearingen v. Amazon Preservation Partners, Inc.*, 2014 WL 3934000, *1 (N.D. Cal. Aug. 11, 2014) (dismissing claim premised on labeling violation where plaintiffs failed to allege that the products "lack even the most basic degree of fitness for ordinary use"); *Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, *10 (N.D. Cal. Mar. 26, 2014) (dismissing implied warranty of merchantability claim where plaintiff did not allege that the accused granola bars "were not edible or contaminated"). Plaintiffs fail to cite to any authority demonstrating a mere alleged labeling violation, in the absence of any allegation regarding the product's basic degree of fitness for ordinary use, is sufficient to state a claim for breach of implied warranty. Accordingly, the Court dismisses Plaintiffs' breach of implied warranty claim. The Court will provide Plaintiffs with leave to amend to state a claim for breach of the implied warranty.

**CONCLUSION**

For the foregoing reasons, the Court DENIES IN PART AND GRANTS IN PART Defendants' motion to dismiss. The Court GRANTS the motion to dismiss as to Plaintiffs' allegations regarding Coke's "original formula" and as to Plaintiffs' claim for breach of the implied warranty. The Court DENIES the motion in all other respects. Plaintiffs may file an amended complaint to allege a claim for breach of implied warranty. In light of the likely

9

consolidation of this case with the other related cases, the Court will not set a deadline to amend at this time.

The Court HEREBY CONTINUES the case management conference to September 26, 2014 at 11:00 a.m. The parties shall file an updated case management statement by no later than September 19, 2014. The statement shall include a proposal from the parties regarding a deadline to amend the pleadings to include a claim for breach of implied warranty. Moreover, if all parties agree to consolidating all of the actions in the MDL proceeding, the deadline will also be the deadline to file a consolidated complaint. If all parties do not agree to consolidation, Plaintiffs shall file a motion to consolidate by no later than September 19, 2014.

The Court admonishes Plaintiffs that, to the extent they view this case, or the related cases, as an opportunity to settle a class action and obtain a large sum of attorneys fees, the Court will review any request for attorneys fees as part of a class action settlement with close scrutiny. From what the Court has observed to date, Plaintiffs have been expending additional, unnecessary hours. As an example, in response to an order allowing supplemental briefing simply on the implications of the Supreme Court's ruling in one case, Plaintiffs filed a fifteen page brief along with voluminous exhibits addressing issues that went far beyond the legal application of the Supreme Court's case.

**IT IS SO ORDERED.**

Dated: August 21, 2014

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE